[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CONCERNING ORDER OF TEMPORARY CUSTODY
The petitioner, the Department of Children and Families (DCF), filed neglect petitions with respect to the minor children Ariana A. (D.O.B. 11/6/90) and Tiana A. (D.O.B. 10/15/92) on December 31, 1996. On the same date, DCF also sought and received ex parte orders of each child's temporary custody from the Superior Court for Juvenile Matters in New Haven. Petitioner initiated its request for OTCs pursuant to the provisions of C.G.S. § 46b-129 (b), and Connecticut Practice Book § 1041.1(1), et sequitur. The respondent mother, Norma G., contested the orders of temporary custody.[1] The case was subsequently transferred to this venue for hearing. A contested hearing in this matter commenced at the Child Protection Session in Middletown on March 13, 1997. After the court received some evidence and testimony during the March 13th hearing, the parties requested a continuance of the case, and agreed upon certain interim expectations which all sides hoped would resolve the matter. The court, pursuant to the agreement of the parties, granted the motion for continuance on March 13th. The settlement arrangement between the parties did not resolve the matter, however, and the contested OTC hearing resumed and was tried to CT Page 6844 completion on June 13, 1997.
FACTUAL FINDINGS
The court, having carefully considered all of the evidence and testimony presented at the contested hearing, makes the following findings of fact:
On December 24, 1996, DCF's child abuse careline received a telephone call from Sean O., the live-in boyfriend of the respondent Norma G.[2] He alleged to DCF that Norma G. had been using drugs all morning, that the couple had engaged in a physical altercation in front of the three children, and that the children were in danger. (Petitioner's Exhibit 1, Page 2). In response to this referral, DCF social workers Leslie Johnson and Lisa Cuda went to see Norma G. on December 24th. The mother appeared to be sober when the workers arrived at her residence. (Petitioner's Exhibit 1, Page 2). Ms. Johnson's affidavit concerning this meeting noted:
 "A verbal agreement was made between [Norma G.] and DCF that she and her children would stay at the home of [Sol C.], maternal grandmother, for the Christmas holiday. Because [Norma G.] has a habit of leaving her children unexpectedly, with various caretakers for days, part of the agreement was that she not leave the children at [Sol C.'s] for an extended length of time." (Petitioner's Exhibit 1, Page 3).
Social worker Johnson transported Norma G. and her three children to the maternal grandmother's home on December 24, 1996 and made plans to see her after the holiday, on December 27, 1996.
On December 27th, Sean O. notified DCF that he had removed his daughter, Ashlee, from Norma G.'s care because the mother had continued using drugs. He informed the petitioner that his mother (Ashlee's paternal grandmother) had obtained emergency temporary custody of the child from a probate court.
Ms. Johnson spoke with Sol C., the maternal grandmother, on December 27, 1996. Sol C. informed the worker that Norma G. had left the grandmother's home with Tiana on December 26th and had not returned. Ariana was left with the grandmother. Sol C. also CT Page 6845 told Ms. Johnson that on December 24, Norma G. left her house claiming that she was going to her apartment to pick up clothing and other necessities for the children. The mother did not return to Sol C.'s home until early the following morning, and she did not have the children's clothing or other supplies when she came back.
Norma G. telephoned her mother, Sol C., on December 27, 1996. She said that she would not reveal where she and Tiana were staying, because she feared that Sol C. would inform DCF. She also told Sol C. that she was going to use drugs that day because that is how she could get into drug rehabilitation. DCF invoked an administrative "96-hour hold" on Ariana's custody on December 27th, based on the grounds that the mother's whereabouts were unknown, and the mother had not made plans for Ariana's care. The ex parte OTCs for both children were secured on December 31, 1996. On January 2, 1997, DCF and the police located the mother. She was found hiding in a closet and appeared to be heavily under the influence of drugs. Tiana was located that day at the home of Sol. C., and DCF assumed her physical custody at that time.
Norma G. testified during the hearing, after being advised by the court of her statutory right not to do so. Although admitting drug use, she denied that it ever interfered with her parenting, or put either of her children at risk. She maintained that her children were never physically abused or neglected, and that they were always properly fed, clothed and cared for by her. She denied ever having an altercation in front of the children, stating that she and Sean O. had argued outside of their residence prior to Christmas. Norma G. testified that she used cocaine daily during the period from October 1996 through December 1996. She denied using drugs in the presence of the children. She testified that on December 26, 1996, she left Tiana upstairs with her landlord and the landlord's daughter while she smoked a $10 bag of cocaine.
As noted above, this OTC proceeding was suspended by agreement of the parties on March 13, 1997. On that date, the parties stipulated that the OTC would remain in effect while the mother obtained drug treatment. The parties agreed that if the mother was successful in her drug treatment and followed her therapist's recommendations, the children would be returned to her on May 2, 1997. It was also agreed that if the mother was unsuccessful in substance abuse therapy, the contested OTC hearing would continue. (Petitioner's Exhibit 3). CT Page 6846
Pursuant to the forgoing agreement, Norma G. entered treatment with an outpatient substance abuse program known as the Mother's Project. This program, which is operated by the APT Foundation in conjunction with Yale-New Haven Hospital, was created to assist mothers who abuse drugs. Donna LePaglia, a psychologist with the Mother's Project, testified that Norma G. has been substantially compliant in the program. However, there was also credible evidence during the hearing that the respondent mother tested positive for cocaine on April 25, 1997, refused to render urine samples on April 8, 1997 and May 20, 1997, and missed nine sessions at the program during the period between April 22, 1997 and June 6, 1997. (Petitioner's Exhibits 5, 6, and 7).
ADJUDICATION
The standard of proof in a temporary custody proceeding is a "fair preponderance of the evidence." In re Juvenile Appeal(83-CD), 189 Conn. 276, 283, 455 A.2d 1313 (1983). In accordance with the provisions of C.G.S. § 46b-129 (b) and Connecticut Practice Book § 1041.1(1), intervention is permitted ". . . only when serious physical illness or serious physical injury is found, or where immediate physical danger is present." In reJuvenile Appeal (83-CD), supra, 287.
There was no evidence in this matter that either Ariana or Tiana were seriously ill, or seriously injured. The court's inquiry, therefore, focuses on whether or not the children were in immediate physical danger from their surroundings, whether or not immediate removal from those surroundings was necessary to ensure the children's safety, and whether or not there was the continued need for protective custody. (See Connecticut Practice Book § 1041.1(1) and § 1041.1(2)).
The evidence during hearing established that Norma G. agreed with DCF on December 24th that she and the children would stay at the home of Sol C. for the Christmas holidays, and that she would not leave the children for an extended period of time. There was a tacit agreement between Norma G. and the petitioner that this was necessary for the safety and well-being of both children. Despite this, Norma G. left Ariana with the grandmother without making proper arrangements for the child's care on December 26th, and took Tiana with her away from the grandmother's home. On December 26th, Norma G. left Tiana upstairs with her landlord and CT Page 6847 landlord's daughter, while she smoked cocaine elsewhere in the same building. In so doing, the mother willingly placed her child in the immediate proximity of an environment where dangerous narcotics were being illegally possessed and used. In so doing, the respondent relegated the care of Tiana to other, unrelated individuals, while she engaged in illegal and dangerous activity nearby in the same building. On December 26th, Norma G. exposed Tiana to a parent whose judgment and cognitive functioning were impaired by drugs. The respondent still had Tiana with her on December 27th, when she telephoned Sol C. During that conversation, the respondent refused to tell the grandmother where she and the child were staying. Norma G. also threatened to use drugs that day so that she would be eligible for drug treatment. After DCF assumed Ariana's custody on December 27th, Norma G. hid Tiana and herself from the petitioner. When she was located in early January 1997, the respondent was hiding in a closet, and was found to be in a highly intoxicated condition. The court finds from the foregoing incidents, and from Norma G's admission during testimony that she used cocaine on a daily basis during the period from October 1996 through December 1996, that the mother engaged in extensive substance abuse which rendered her behavior erratic, and which substantially interfered with her thinking, judgment and capabilities to function as an appropriate parent. As a direct result of her cocaine abuse, her behavior, and her inattention to Tiana and Ariana, Norma G's conduct created an immediate risk of physical danger to both children during the period of time in question prior to the OTC filings.
It is commendable that Norma G. has sought and received substance abuse treatment from the Mother's Project since March 13, 1997. However, the respondent's relapse with cocaine on April 25th, and her behavior in the treatment program during May and June 1997, compel the court to find that the risk of immediate danger to the children still exists.
Based on all of the foregoing, the court finds that DCF has met its burden of proving by a fair preponderance of the evidence that the children were in immediate physical danger from their surroundings, that immediate removal from those surroundings was necessary to ensure their safety, and that there is a continued need for the children to remain in DCF's protective custody. Accordingly, the orders of temporary custody with respect to Ariana A. and Tiana A. are hereby confirmed.
Dated at Middletown, Connecticut this 26th day of June, 1997. CT Page 6848
BY THE COURT
DYER, J.